The principal and most interesting question presented in this case, is, whether the Governor of this State has the constitutional power to approve and sign bills after the adjournment of the legislature. It is contended, by the counsel for the respondents, that the whole legislative power of the State being vested in a Senate and in an Assembly, upon their adjournment no power existed in any other department of the government to make the bill in question a law. He endeavors to maintain this position upon the ground, that such a power would be an absolute power of determining whether a bill should become a law; which would be an exercise of legislative functions, not granted to the Governor by the Constitution.
It is confidently asserted, by the counsel of the respondent, that the Governor possesses no legislative functions, and he, consequently, maintains that as the power of signing bills after the adjournment of the Senate and Assembly, would amount to an exercise of legislation, the exercise of such a power is unconstitutional and void.
The 9th section, of article 4th, of the Constitution of this State, prescribes a general outline of the method by which laws shall be enacted. It dictates the action of all the agencies, which have anything to do with legislation, in the general sense of that word. The bill must be initiated in one of the two houses, and when it passes both, in the first instance, it is no more a law than when it passed only one. It is still necessary that it should be presented to the Governor for his approval or disapproval. By his approval, he gives it life; then, only, it becomes a law. By his disapproval, it remains inert and inoperative; and, if the two houses should deem it of sufficient importance, notwithstanding the non-concurrence of the Governor, to make it a law, a new and somewhat different course of action becomes necessary on their part. The house, to which the Governor has returned the bill, must record his objections and proceed to reconsider it. If, after reconsideration, two-thirds of the members present shall agree to pass the bill, it must be sent, together with the objections, to the other house, by which it must likewise be reconsidered; and, if approved *Page 525 
by two-thirds of all the members present, it becomes a law, notwithstanding the objections of the Governor.
Now, to say that this right of the two houses to pass a bill, notwithstanding the objections of the Governor, divests him, as a branch of the government, of any legislative functions, or that he does not participate in the legislative power, is the affirmation of a mere verbal distinction. It is a distinction without a difference. That he has an agency in making, though not in framing laws: that his action in enacting them is in many cases necessary, and, without that action, numerous bills practically fail to become laws, cannot be disputed; and it is of very little consequence, indeed, whether we call his action a participation in the legislative power, or an agency in enacting laws. That he has some instrumentality, and a very important instrumentality in this work, is evident; and all we can say, is, that while he cannot make laws without the concurrence of the two houses, they can, under certain circumstances, make laws without his concurrence.
His power, indeed, in degree, is not as great as that of the Sovereign of the United Kingdom of Great Britain and Ireland; it is not an absolute veto, but a right of disapproval, which, at all events, arrests, and, in many instances, frustrates the action of the two houses.
It is conceded, by all writers on English constitutional law, that the Sovereign partakes of the legislative power. But his legislative function is not, any more than that of the Governor of this State, of the deliberative kind. As Wooddeson says: "it consists not in devising expedients, in altering or amending, or in conditional assent or dissent." It consists merely in the power of rejecting, and not in resolving.
For nearly two centuries, undoubtedly, after the origination of Parliaments in England, the Commons used the style of very humble petitioners, their petitions frequently beginning with "your poor commons beg and pray," and concluding with, "for God's sake and as an act of charity." It was, at length, however, discovered that this gave, in fact, the whole power of legislation to the King. He modified and altered bills; and *Page 526 
out of the petitions and answers, new statutes were extracted and framed, without the authority of the Lords or Commons. To remedy this evil, about the latter end of the reign of Henry the VI, and the beginning of the following reign, bills were reduced in the first instance into the complete form of acts of Parliament, in which they have ever since been framed, and thus come to the Sovereign for assent or rejection. She has now no greater power in framing, altering, or resolving, than the President of the United States, or the Governor of this State. It is simply the power of rejection which the British Sovereign possesses, although to a greater extent than the President or the Governor; the difference, I repeat, being plainly in degree and not in kind.
But, it is urged, that the 1st section of article 3d of our State Constitution declares, that the legislative power shall be vested in a Senate and an Assembly. In answer to this we say that, notwithstanding this declaration, section 9 of article 4 vests a power in the Governor which we have endeavored to prove to be a participation, measurably, in the legislative power; and in construing the instrument, of course, the whole must be taken together. The action, therefore, of the Governor, in the case before us, is relieved from the difficulty, if any really existed, suggested by the counsel of the respondents. We must then return to the section under consideration, and determine, from its general import or express terms, whether that action is in accordance with the Constitution.
How is the approval or disapproval of the Governor to be expressed or ascertained? The former is ascertained by his signature, or by not returning the bill to the legislature within ten days (Sundays excepted); his disapproval is ascertained, except in the contingency, to which we shall presently refer, by his returning the bill within those ten days, and stating his objections. This power of disapproval is a conservative, and, therefore, a most important prerogative of the Governor. Whoever has reflected, by the light of history or of current events upon the usurpations, corruption and recklessness of legislative *Page 527 
bodies, will at once recognize the importance of preserving it in its complete integrity. The numerous members of whom those bodies are composed, seldom feel the deep sense of responsibility by which the executive and judicial departments are generally influenced. Where duty is shared among numbers, it is seldom discharged with that solicitude which is felt when it is confined to one man, or to a few men. The consciousness of responsibility seems to be commensurate with the apportionment of duty. In proof of this we have only to consider the conduct of nearly all legislative bodies, and particularly two examples, calamitously prominent in history — the Long Parliament of Great Britain, and the Legislative Assembly and National Convention of revolutionary France, which absorbed, in a brief period, all the powers of government, and became the most odious and cruel instruments of tyranny and corruption.
Without a veto, absolute or qualified, this tendency would be unchecked; and, when conferred in the manner provided by our Constitution, it could, were it not carefully guarded, be practically annulled or defeated by the intentional or unintentional action of the legislature. One most obvious method would be by its adjournment within ten days after the bill is presented to the Governor. The Constitution provides that he shall have ten days to consider the bill, within which time he may disapprove of it; now, if the legislature adjourned within the ten days, he would be deprived of this opportunity, if there was not a further provision to meet this contingency. This is the purpose, and the sole purpose, of the latter part of the last sentence of the section. It provides "if any bill shall not be returned by the Governor within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the legislature shall, by their adjournment, prevent its return; in which case it shall not be a law." What object other than the one which I have indicated, could this provision serve? There could be no adequate object in declaring a bill passed by the two houses, but signed after the adjournment, to be no law. *Page 528 
Both having concurred and adopted the bill, and the Governor afterwards concurring and signing it, no purpose, whatever, in such case, could be fulfilled by a prolongation of the session. No purpose indicated or declared by the Constitution, could be effected or aided by it. When the Governor signs a bill during the session, he does not — let it be borne in mind — return it to either house. The houses have nothing further to do with it. He frequently, no doubt, as a matter of information, apprises them, during the session, that he has signed a list of bills; but he is under no necessity or obligation to do so. In no instance, when he signs a bill, does he return it to either house; he sends it to the Secretary of State, who files it in his office.
But if he should disapprove of a bill, and has not time to express his disapproval, in consequence of the adjournment of the two houses, then there is a very manifest reason why it should be declared to be no law. That reason is, as I have intimated, the protection of this power of disapproval against the sinister designs of a bare majority, in the first instance, of the two houses. Without this provision, I repeat, the Senate and Assembly could nullify this power. For, as in a previous part of the sentence, it is declared that unless the Governor shall return the bill within ten days it shall be deemed a law, the legislature, by adjourning, would deprive him of this right, unless it was further provided to be no law, in case of their adjournment, if he should disapprove of it.
Again, not only does the manifest object of the provision require this interpretation, but the language employed admits of no other. Let us again read the last sentence of the section. It says: "If any bill shall not be returned by the Governor, within ten days (Sundays excepted) after it shall be presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature shall, by their adjournment, prevent itsreturn." Of course the first part of the sentence means that the bill shall become a law, unless the Governor returns it, with his disapproval and reasons, within ten days; so the latter part can contemplate nothing but the return, with *Page 529 
his disapproval and reasons, which may be prevented by the adjournment. I have shown it is only when the Governor disapproves that the return of a bill to the legislature is contemplated; when he signs a bill he does not return it; he sends it, as I have said, to the Secretary of State, who records it. The words, then, "prevent its return," do not and cannot apply to his approving and signing a bill.
To recapitulate: The Constitution of the State of New York, in no part of it, expressly or impliedly, prohibits the Governor from signing bills after the adjournment of the Senate and Assembly. The words in the concluding sentence in the 9th section of article 4th, which have been supposed to import such a prohibition, apply, solely, to his disapproval of a bill in a certain event, and are designed for the protection of his right of rejection. The whole section prescribes the manner of approval and of disapproval. If he retains a bill, without signing it, for ten days during the session, his approval is to be presumed; but, if he retain it after the adjournment, without signing it, his disapproval is to be presumed, and it fails to become a law.
If the terms of the section admit of no other interpretation, of which I can entertain no doubt, it seems superfluous to consider the argument of precedent, or practice of the executive, under other constitutional governments. But, it may be well to observe, that with regard to the practice of the British Government, no reason exists there why the approval or disapproval of bills by the Sovereign should be delayed after the prorogation of Parliament. The Sovereign exercises all her various powers and prerogatives in conformity with the advice of her council or cabinet, the members of which alone are individually responsible for the acts of the government. Every member of her cabinet is a member of either the House of Commons or the House of Lords. It is the duty and practice of each, vigilantly, to watch the progress of every bill through the house to which he belongs. He generally takes an active part in considering and discussing it, and, before the end of the session, is fully prepared to advise the Monarch to grant or to withhold the *Page 530 
royal assent. In fact the latter prerogative has never been exercised since 1692, when William the III refused his assent to the bill for triennial parliaments, which, however, he granted two years afterwards.
With regard to the practice of the President of the United States and the Governors of the several States, I believe the former has always signed bills before the adjournment of Congress, and many of the latter are in the habit of doing so after the adjournment of the legislative bodies with whom they are respectively concerned. But as far as mere custom or practice can have any bearing on the question before us, I can only say that the practice of the supreme executive of every government, in a matter of this kind, must be guided by the express or implied language of the Constitution under which he acts, or, in the absence of any such guidance, by necessity or expediency. The President of the United States is probably able, without serious inconvenience, to examine every bill before the adjournment of Congress. At all events, if this question depended upon precedent, the practice which has obtained in our own State, may surely be adduced against that of any other government, and should be considered controlling. We have seen that it has been the practice of many Governors of this State, for a considerable number of years, to sign bills after the adjournment of the legislature.
With regard to the other constitutional objections presented on the demurrer, we entirely concur with the judge who decided the case at special term.
The decision of the general term should be reversed with costs.
COMSTOCK, Ch. J., dissented; all the other judges concurring,
Judgment reversed and judgment at special term affirmed. *Page 531